IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

|  |  |  |
|---|---|---|
| Marvin J. Moody, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12cv583 (GBL/JFA) |
| | ) | |
| Alisa Williams, et al., | ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION & ORDER</u>

This matter comes before the Court upon review of defendants Burnett and Branch's supplemental memorandum in support of their previously-filed Motion for Summary Judgment. Marvin J. Moody, a Virginia inmate proceeding <u>pro se</u>, initially filed this action against ten defendants at Richmond City Jail ("Richmond"), alleging violations of his Eighth and Fourteenth Amendment rights. By Order dated February 12, 2014, the Court granted eight defendants' Motion for Summary Judgment, and granted in part and denied in part the instant defendants' Motion. Dkt. 102. The Motion was granted with regard to plaintiff's claim that the conditions of his confinement constituted cruel and unusual punishment, as well as plaintiff's claim that his time spent in segregated confinement violated his Fourteenth Amendment due process rights. The Motion was denied on the issue of whether plaintiff received required due process protections before his confinement in segregation. This denial was without prejudice to the defendants' ability to submit supplemental briefing on this issue.

Defendants submitted a supplemental brief on this issue, and plaintiff filed a response. Dkts. 105, 107-109. Defendants filed a reply to plaintiff's response, and plaintiff filed a sur-reply. Dkts. 111, 112. Based on the supplemental briefing, defendants' Motion for Summary Judgment will be granted.

## I. Background

The Court described the facts of this case in great detail in its Opinion of February 11, 2014, and need not provide them again.   See Memorandum Opinion, Feb. 11, 2014 ("Mem. Op.") [Dkt. 101], at 2-7.   Plaintiff originally brought this action against Dr. Alisa Williams, psychiatrist at Richmond; Dr. Muhammad; Carolyn Williams, Director of Nursing at Richmond; Nurse Williams; Physician's Assistant Cushionberry;[1] Dr. Mostumi Moja; Dr. Gursevva Pabla; Deputy Allan Nixon; Deputy Randy Branch; and Colonel William Burnett.   Plaintiff alleged that the first eight defendants provided inadequate treatment for an "unknown heart condition," showing deliberate indifference to his serious medical needs.   The Court granted these defendants' Motion for Summary Judgment.   Plaintiff also made four allegations against Branch and Burnett: (1) the defendants violated his Fourteenth Amendment Due Process rights by placing him in administrative segregation; (2) the defendants violated his Eighth Amendment rights by placing him in administrative segregation; (3) his placement into administrative segregation constituted retaliation; and (4) the defendants violated his Due Process rights by denying him access to prison grievance procedures.

The Court construed plaintiff's first claim to be based on three distinct grounds: (1) his actual placement into administrative segregation; (2) the amount of time he remained in administrative segregation and the conditions of that confinement; and (3) his failure to receive any procedural protections prior to his confinement in administrative segregation.   The Court granted the defendants' Motion for Summary Judgment on the first two grounds, and denied the Motion on the third ground.[2]

---

[1] Plaintiff identified defendant Cushionberry as a nurse.   This description was incorrect.   See Memorandum in Support of Motion for Summary Judgment [Dkt. 81], at 1.

[2] The Court also granted Burnett and Branch's Motion on claims (2) through (4) described

The facts relevant to this remaining claim are as follows. It is undisputed that, in May of 2012, one of Deputy Branch's job duties was to escort plaintiff to the medical wing for treatment of an ingrown toenail. At some point during this month, a nurse asked Branch to remove plaintiff from the treatment room because of threatening comments plaintiff made to Dr. Moja. See Defendants Col. Burnett and Deputy Branch's Brief in Support of Motion for Summary Judgment ("Defs.' Brief") [Dkt. 78], Ex. B (Branch Aff.) ¶¶ 4, 5. According to Moja's notes from May 8, 2012, plaintiff became irritated and yelled "I will F your license!" to the doctor. Id. Ex. C (Jackson Aff.), Att. D (May 8, 2012 Progress Note). In response to this incident, Colonel Burnett directed Branch to transfer plaintiff from general housing to administrative segregation. See id. Ex. A (Burnett Aff.) ¶ 4. Although plaintiff alleges that he was housed in administrative segregation for 56 days, records reflect that he remained in administrative segregation only from May 11, 2012 through May 18, 2012. See, e.g., Declaration of Marvin J. Moody ("Pl.'s Decl.") [Dkt. 94-1] ¶ 2; Defs.' Brief, Ex. D (Bassfield Aff.) ¶¶ 4, 8. On May 18, 2012, plaintiff was transferred to a housing unit in the general population, but with "limited" access to recreation, commissary, phones, and television. Defs.' Brief, Ex. D ¶¶ 15-16. He remained there until July 5, 2012.[3]

Administrative segregation, where plaintiff remained for seven days, "is a part of special purpose housing." Id. Ex. A ¶ 4. Special purpose housing also houses inmates who require "medical/mental health segregation, pre-hearing detention, disciplinary detention, . . . and protective custody." Id. ¶ 7. Inmates housed in special purpose housing are subject to conditions similar to those in the general population. They have access to mail, the library, counseling,

---

above.
    [3] Plaintiff alleges that he actually remained in administrative segregation until July 5, 2012. See, e.g., Pl.'s Decl. ¶ 2.

religious services, attorney visits, and recreation.   They also have the ability to shower three times

per week, and are provided with a toilet, sink, mattress, and sheets.   See id. ¶¶ 8-10; Defs.' Brief

Ex. D ¶¶ 9-11.   Inmates in special purpose housing are restricted, however, from accessing

phones, televisions, the commissary, and personal visits.   Defs.' Brief, Ex. A. ¶ 8; id. Ex. D ¶ 12.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56.   The moving party bears the burden of proving that judgment as a

matter of law is appropriate.   See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   To meet

that burden, the moving party must demonstrate that no genuine issues of material fact are present

for resolution.   Id. at 322.   Once a moving party has met its burden to show that it is entitled to

judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts

that create disputed factual issues.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, a district court should consider the evidence in the

light most favorable to the nonmoving party and draw all reasonable inferences from those facts in

favor of that party.   United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are facts which are

material.   "[T]he substantive law will identify which facts are material.   Only disputes over facts

which might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment."   Anderson, 477 U.S. at 248.   An issue of material fact is genuine

when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice."

Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds

4

by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).   Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. Analysis

The sole remaining disputed issue in this case is plaintiff's contention that he was placed in administrative segregation without proper procedural protections.   See Am. Compl. [Dkt. 7], at handwritten att. pg. 3.   In denying the defendants' Motion for Summary Judgment on this issue, the Court directed defendants to submit supplemental briefing on "whether plaintiff was afforded the protections required by [Wolff v. McDonnell, 418 U.S. 539 (1974)] and, if not, whether such protections are required after [Sandin v. Conner, 515 U.S. 472 (1995)]."   Mem. Op., at 12.   After reviewing the defendants' supplemental briefing, it is clear that summary judgment is appropriate in favor of the defendants, as plaintiff does not have a protected liberty interest in remaining free from administrative segregation.   He therefore was not entitled to any procedural protections before placed in administrative segregation.

Plaintiff argues that his due process rights were violated when he was placed in administrative segregation with only a vague idea of the reasons for this placement.   See, e.g., Am. Compl., at handwritten att. pg. 3 ("When [defendants] place me in the hold they have failed to explain my confinement or follow the institution's disciplinary hearing procedures that offer me a chance to my defense and evidence towards it.").   Defendants do not contest this fact, and do not allege that plaintiff received any kind of hearing prior to his placement in administrative segregation.   Therefore, it is undisputed that plaintiff did not receive any procedural protections prior to his seven-day confinement in administrative segregation.

5

However, the protections of the Due Process Clause apply only when the state operates to deprive an individual of a protected interest in life, liberty, or property.   See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."); Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Thus, the first step in any due process analysis is to determine whether a plaintiff actually has a protected interest in life, liberty, or property.   Plaintiff does not contend that he was deprived of life or property, and argues only that he was deprived of a liberty interest.

It is well established that "states may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin, 515 U.S. at 483.   However, an inmate's liberty interest is "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 484, or which affects the duration of his sentence, id. at 487.   If a plaintiff has a liberty interest within the meaning of Sandin, he is entitled to certain procedural protections before that interest can be taken away.   Specifically, in Wolff, the Court held that an inmate must be provided with basic procedural protections before being deprived of a protected liberty interest such as the loss of good time credits.   See Wolff, 418 U.S. at 571 (1974).   However, procedural protections only apply "to protect a substantive interest to which the individual has a legitimate claim of entitlement." Olim v. Wakinekona, 461 U.S. 238, 250 (1983), abrogated in part by Sandin, 515 U.S. at 472.   As the Fourth Circuit has recognized, an inmate does not have a protected interest in the Wolff procedures themselves, but only in the substantive right that the procedures protect.   See Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993).

Thus, unless an inmate has an actual protected liberty interest in a particular condition,

any failure of the prison to provide him with procedural protections does not implicate the Due Process Clause.   See Lamp v. Wallace, No. CIV A 304cv317, 2005 WL 5303512, at *7 (E.D. Va. Mar. 23, 2005); Donohue v. Diggs, No. 7:11cv90, 2011 WL 795889, at *3 (W.D. Va. Mar. 1, 2011).   This is true even if the state fails to follow its own procedures or regulations.   See Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990); see also Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996) ("[T]he Due Process Clause does not federalize state-law procedural requirements.").

Based on this analysis, it is clear from the facts provided that the failure to provide plaintiff with a hearing prior to his placement in administrative segregation did not violate the Due Process Clause.   This Court previously found that plaintiff's confinement in administrative segregation did not constitute an atypical and significant hardship over the ordinary incidents of prison life.   See Mem. Op., at 10-11.   Specifically, the Court found that the conditions in administrative segregation were similar to those in the general population, and that plaintiff did not have a liberty interest in avoiding administrative segregation.

Plaintiff has submitted an affidavit in which he alleges that the conditions in administrative segregation were "significant and atypical."   See Declaration of Marvin J. Moody [Dkt. 108].   Specifically, he alleges that he was housed with individuals infected with tuberculosis, that he was not allowed recreation or time outside, that his cell contained insects and rats, that he was not allowed religious services, and that he was housed with mentally ill inmates.   See id. ¶ 4.   Plaintiff made substantially the same allegations in a previous affidavit submitted in response to the defendants' Motion for Summary Judgment.   See Pl.'s Decl.   The Court found that this dispute of fact was not material to the Summary Judgment analysis, as, even construing the facts in the light most favorable to plaintiff, these conditions did not

7

constitute an atypical and significant hardship constituting a liberty interest encompassed by Sandin. See Mem. Op., at 10-11 (citing Beverati, 120 F.3d at 502). As plaintiff did not have a liberty interest in remaining free from administrative segregation, he was not entitled to any procedural protections before being placed in administrative segregation. The defendants therefore did not violate his Fourteenth Amendment rights.

## V. Conclusion

For the above-stated reasons, it is hereby

ORDERED that defendants Branch and Burnett's Motion for Summary Judgment (Dkt. 78) be and is GRANTED.

This is a final order for purposes of appeal. To appeal, plaintiff must file a written notice of appeal with the Clerk's Office within thirty (30) days of the date of this Order. See Fed. R. App. P. 4(a). A written notice of appeal is a short statement stating a desire to appeal this Order and noting the date of the Order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court.

The Clerk is directed to enter final judgment in favor of defendants Deputy Randy Branch and Colonel William Burnett, pursuant to Fed. R. Civ. P. 58, to close this civil action, and to send a copy of this Memorandum Opinion and Order to plaintiff and to counsel of record for defendants.

Entered this 24 day of April 2015.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia

8